IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BILLIE JOE WHEELER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CIV-14-1033-L |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Administrative/Judicial History

This case has a fairly lengthy history and a voluminous record, although much of the record is repetitious. In September 2009 (protective filing), Plaintiff filed for Title II DIB benefits, alleging that he became disabled in January 2009. (TR 101, 118). He alleged

1

disability due to "back surgery; right knee problems; [and] high blood pressure." (TR 123). Plaintiff later stated that he had injured his right shoulder and left knee and undergone a second back operation. (TR 143). Plaintiff previously worked as a painter and drywall installer. (TR 124, 128).

The medical record reflects that Dr. Gentry, a neurosurgeon, diagnosed Plaintiff in January 2009 with a herniated disc. (TR 173). Plaintiff underwent surgery in January 2009 to repair the herniated disk with fusion and screw placement. (TR 183). Plaintiff had physical therapy following the surgery, and he improved. (TR 194). A second surgeon, Dr. Ice, noted in October 2009 that Plaintiff's back was stable following his operation. (TR 187).

In November 2009, Plaintiff was treated by Dr. Parker, an orthopedic specialist, for right knee degenerative joint disease. Plaintiff received an injection, which he reported provided total pain relief. (TR 223, 228). Plaintiff underwent a second back surgery in March 2010 to remove the hardware. (TR 260). The neurosurgeon, Dr. Gentry, noted that Plaintiff's fusion was solid and there was no movement. (TR 261). In April 2010, Plaintiff reported that he was feeling a lot better and doing a lot of walking. (TR 298).

Plaintiff was treated by Dr. Parker in February 2010 for left shoulder and bilateral knee pain resulting from a fall. (TR 284). X-rays of Plaintiff's knees showed no acute injury. (TR 284). In April 2010, Dr. Parker reviewed x-rays and MRI testing of Plaintiff's left shoulder and diagnosed a rotator cuff tear. (TR 280). Dr. Parker performed an arthroscopic operation on Plaintiff's left shoulder in April 2010. (TR 313). By June 2010, Plaintiff reported he was undergoing physical therapy, which was improving his left shoulder. Dr.

2

Parker imposed a 15-pound lifting limitation. (TR 308).

Plaintiff and a vocational expert ("VE") testified at a hearing before Administrative Law Judge ("ALJ") Marcy in April 2011. Following this hearing, ALJ Marcy issued an unfavorable decision. (TR 9-15, 20-44). Plaintiff appealed the final administrative decision, and this Court remanded for further administrative proceedings in June 2013. (TR 368-380).

ALJ Belcher ("ALJ") conducted a hearing on July 3, 2014, at which Plaintiff and a VE testified. (TR 338-367). Plaintiff testified he was 44 years old and had not worked since his alleged disability onset date of January 5, 2009. Plaintiff stated that he had a 7th grade education and could not read or write. Plaintiff stated he had injured his back in 2006 in a motor vehicle accident, he had constant low back pain and right leg pain and numbness, and his treating doctor, Dr. Gentry, had imposed a 25-pound lifting limitation. He was taking high blood pressure medication, which controlled his blood pressure, and he was not taking pain medication because of lack of funds or insurance. He had stopped taking the anti-depressant medication prescribed at his treating clinic because of adverse side effects. Plaintiff estimated he could stand for only about 30 minutes, sit for 30 minutes, and walk a block. Plaintiff stated he did some laundry and went grocery shopping with his wife.

In June 2012, Plaintiff protectively applied for Title XVI SSI benefits and alleged that he became disabled on January 5, 2009, due to two back surgeries, right knee problems, left shoulder problems, high blood pressure, and allergies. (TR 480, 501). He alleged that he had a 7th grade education. (TR 481). Plaintiff stated he could no longer work because he could not stand or bend for very long periods of time. (TR 493). Plaintiff stated he could lift up to

3

20 pounds but he could only stand for about 20 minutes, sit for 30 minutes, and walk for about 30 minutes. (TR 498). Plaintiff's wife estimated he could lift 30 pounds and walk a few blocks. (TR 516).

In July 2012, Plaintiff returned to Dr. Gentry and complained that his low back pain had returned. Plaintiff also complained of right leg, neck, and right arm pain. (TR 662). Dr. Gentry noted in August 2012 that a lumbar myelogram was performed showing "adjacent level problems with facet arthropathy" at two levels, causing foraminal and lateral recess stenosis. (TR 660). Back surgery with fusion of these levels with hardware placement was performed by Dr. Gentry on October 1, 2012. (TR 692). X-rays, CT scan, and MRI testing of Plaintiff's lumbar spine following the operation showed good results. (TR 658, 715). In December 2012, Plaintiff reported to Dr. Gentry that his back had improved and was stable. (TR 713).

Plaintiff complained of neck pain and bilateral arm pain. Dr. Gentry's diagnosis was herniated disc with impingement on the left neural foramen and nerve. (TR 713). In December 2012, Dr. Gentry performed a cervical fusion operation, and in January 2013 he noted Plaintiff was doing well post-operatively and walking without difficulty. (TR 711).

In February 2013, Dr. Gentry noted he recommended a spinal cord stimulator for Plaintiff's complaint of continuing low back pain. (TR 709). Plaintiff was referred to a pain management specialist, Dr. Merriman, who examined Plaintiff in April 2013 and performed right-sided and left-sided medial branch blocks at the upper lumbar levels. (TR 781, 782). In July 2013, Dr. Merriman instituted a trial of a dorsal column stimulator to treat Plaintiff's

4

chronic low back pain, lumbar spondylosis, and post-laminectomy syndrome of the lumbar spine. (TR 778).

A permanent spinal cord stimulator was implanted in August 2013. (TR 815). In September 2013, Plaintiff reported the stimulator was helping and he was doing well. (TR 815). Subsequently, however, the stimulator was removed based on Plaintiff's complaint that it was not working properly. (TR 810-812). In January 2014, Plaintiff returned to Dr. Gentry's clinic and reported that he continued to have lower back pain, and he complained of left heel pain. (TR 806). He declined an offer of pain medication to treat his lumbago. (TR 806).

Dr. Gentry completed a medical source statement dated February 19, 2014. (TR 858-861). Dr. Gentry opined that Plaintiff could not walk one block, could not sit for more than one hour or stand for more than one hour at a time, and he could sit or stand/walk for less than 2 hours in an 8-hour workday. He could not bend at the waist, never crawl, twist, or stoop, and could lift up to 10 pounds. He would have difficulty working at a full-time job on a sustained basis due to chronic low back pain and a history of multiple spine surgeries, and he became disabled "5 years ago." (TR 861).

Plaintiff underwent a consultative mental status examination conducted by Richard D. Kahoe, Ph.D., in August 2012. (TR 649-653). Plaintiff complained of depression and anxiety with one to two panic attacks a month during the previous six months. The diagnostic impression was unspecified depressive disorder, panic disorder without agoraphobia, and a provisional diagnosis of borderline intellectual functioning. (TR 652).

5

Plaintiff reported to Dr. Kahoe that he and his wife had recently filed a bankruptcy action, and Dr. Kahoe noted that Plaintiff exhibited "limited verbal skills" which "impair[ed] his ability to deal emotionally with the physical and economical setbacks in his life." (TR 652).

Plaintiff has received treatment at the Northwest Center for Behavioral Health for depression beginning in July 2012. (TR 784-805, 862-868). In March 2014, Plaintiff reported that his antidepressant medication and going to church were helping his depression. (TR 863). In March 2014, Plaintiff saw Dr. Chesler for medication management at the clinic. Dr. Chesler noted Plaintiff complained of boredom and stress due to financial issues. Dr. Chesler did not note any abnormal mental status findings and prescribed anti-anxiety and hypertension medication. (TR 864-865). In April 2014, Plaintiff reported he was doing well. (TR 862).

II. ALJ's Decision

On July 25, 2014, the ALJ issued a decision finding that Plaintiff was not disabled. Following the agency's well-established sequential evaluation procedure, the ALJ found at step one that Plaintiff had not worked since his alleged onset date of January 5, 2009. At step two, the ALJ found that Plaintiff had severe impairments due to a spinal impairment, a bilateral knee impairment, a left shoulder impairment, and a learning disorder. At the third step, the ALJ found that these impairments, considered singly and in combination, did not meet or equal the requirements of a listed impairment. At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform work at the light exertional

level. He was able to lift and carry no more than 20 pounds occasionally and 10 pounds frequently, he could stand or walk up to 6 hours in an 8-hour workday, and he could sit for 6 hours in an 8-hour workday. He could perform tasks where there was only an occasional requirement for climbing ropes, ladders, or scaffolds, an occasional requirement for climbing stairs, and an occasional requirement for balancing, bending, stooping, kneeling, crouching, or crawling, and he could read at a Level 2 reading level.

Based on this RFC for work, the ALJ found that Plaintiff was not capable of performing his previous jobs as a painter, dry wall applicator, or maintenance worker. Relying on the VE's hearing testimony, the ALJ found at step five that Plaintiff was capable of performing other work available in the economy, including the jobs of production inspector, press machine operator, and office cleaner. Therefore, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act.

Plaintiff did not request review of the ALJ's decision and the Appeals Council did not assume jurisdiction on its own to review the decision. Therefore, the ALJ's decision is the final decision of the Commissioner. 20 C.F.R. § 404.984.

III. General Legal Standards Guiding Judicial Review

The Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less

than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

The Social Security Act authorizes payment of benefits to an individual with disabilities. 42 U.S.C. § 401 *et seq*. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord, 42 U.S.C. § 1382c(a)(3)(A); see 20 C.F.R. § 416.909 (duration requirement). Both the "impairment" and the "inability" must be expected to last not less than twelve months. Barnhart v. Walton, 535 U.S. 212 (2002).

IV. Analysis of Mental Impairment

In the ALJ's decision, the ALJ recognized that Plaintiff had undergone a consultative mental status evaluation and that he had received treatment for mental issues at the Northwest Center for Behavioral health. (TR 325-326). The ALJ summarized the report of the consultative examiner, Dr. Kahoe, and the office notes of Plaintiff's treating psychiatrist, Dr. Chesler, which included Plaintiff's subjective statements of his mental abilities. Based on this consideration of the evidence, the ALJ found that he did "not find adequate information or evidence that would indicate the claimant's depression and anxiety pose more

8

than minimal restrictions or limitations." (TR 326).

Plaintiff contends that the ALJ erred by failing to follow the procedure set forth in 20 C.F.R. §§ 404.1520a and 416.920a and set forth the specific findings required by the procedure. Plaintiff also contends that the ALJ erred by failing to include any mental limitations in the RFC finding. Plaintiff has not shown any error at step two or step four.

In this case, the ALJ "made an explicit finding that [Plaintiff] suffered from severe impairments." Oldham v. Astrue, 509 F.3d 1254, 1257 (10th Cir. 2007). In reaching the step two finding, the ALJ considered the medical and nonmedical evidence concerning Plaintiff's alleged mental impairments and found that those impairments were medically determinable but non-severe. Although "a finding of non-severity alone would not support a decision to prepare an RFC assessment omitting any mental restriction," Wells v. Colvin, 727 F.3d 1061, 1065 (10th Cir. 2013), the ALJ went further and found that Plaintiff's depression and anxiety posed no restriction on his ability to work. This finding "obviate[s] the need for further analysis at step four." Id. at n. 3.

Further, even if the ALJ's failure to document the special technique set forth in 20 C.F.R. §§ 404.1520a and 416.920a was error, it was harmless. See Thompson v. Colvin, 551 Fed. App'x. 944, 946-947 (10th Cir. 2014)(unpublished op.)(finding ALJ's failure to document special technique for evaluating mental impairments was harmless error). The ALJ reviewed the relevant evidence and found that Plaintiff's nonsevere mental impairments did not limit his ability to work. No reasonable factfinder could make a different conclusion based on the evidence in the record. See Fischer-Ross v. Barnhart, 431 F.3d 729, 733-735

(10th Cir. 2005)(holding "an ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment" where no reasonable administrative factfinder could have resolved the matter any other way). Plaintiff reported to Dr. Chesler that medication prescribed for his depression and anxiety was helpful, although Plaintiff was not taking his prescribed medication at the time of the hearing, he reported to his treating clinic that he had voluntarily stopped taking his prescribed medications in May and June 2013, and he declined medications at his treating clinic in October 2013. (TR 787, 790, 792). Dr. Chesler's office notes do not include objective findings of severe mental impairments. Further, no treating or examining physician imposed work-related limitations stemming from depression or anxiety. Plaintiff points to an observation in Dr. Kahoe's report of his consultative mental status evaluation of Plaintiff in which Dr. Kahoe notes that "[e]valuation of cognitive processes indicated that Mr. Wheeler's attention and concentration skills were moderately impaired." (TR 650). However, Dr. Kahoe did not include any work-related limitations in his diagnostic assessment.

The ALJ did find that Plaintiff's mental impairment due to a learning disorder resulted in work-related limitations and found Plaintiff's RFC for work included a "Level 2 reading level" limitation. (TR 327). The ALJ reasoned that Plaintiff was able to perform his past relevant work "which includes reading requirements at Level 1 and Level 2 [and] he should be able to perform unskilled work . . . ." (TR 329). There is substantial evidence in the record to support this finding.

The VE's hearing testimony provides substantial evidence to support the step five determination. Hence, the Commissioner's decision should be affirmed.

RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before       August 3rd    , 2015, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this       14th       day of       July      , 2015.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE